OPINION OF THE COURT
Titone, J.
This appeal involving the application of Batson v Kentucky (476 US 79) concerns the minimum showing that must be made to establish a prima facie case of unlawful discrimination in the use of peremptory challenges. Also at issue is *265 whether the minutes of the voir dire must be furnished in order to obtain relief on appeal under Batson v Kentucky (supra).
Defendant, an African-American, was charged with burglarizing an apartment in Freeport, Long Island. During the selection of the jury preceding his trial, defense counsel asserted that the prosecutor was using his peremptory challenges to exclude African-American jurors. The following colloquy ensued:
"[defense counsel]: Your Honor, I would like to raise an objection at this point. The district attorney has excluded black jurors on the panel. I feel that their questioning was proper. They indicated no reason why they could not serve fairly on this jury. I think that there must be some motivation for that challenging. And I would ask the Court to exclude those challenges.
"the court: I am old fashioned. I think the word peremptorily means exactly what it says. However, aside from that, I don’t notice anything. Of course, you have your exception.
"[prosecutor]: If I could just make a record?
"the court: Go ahead.
"[the prosecutor]: There were three black jurors on this particular panel, and I accepted one black juror. And it is not as if I was excluding black jurors because of their race.
"the court: Okay. You have an exception.”
A panel of 12 jurors was ultimately seated. Defendant was tried and convicted of burglary in the second degree and possession of burglar’s tools.
On his appeal from the judgment of conviction, defendant argued, among other things, that the trial court had erred in refusing to require the prosecutor to furnish a race-neutral explanation for his use of peremptories to exclude African-American jurors. The Appellate Division rejected this argument, holding that defendant had "failed to substantiate his claim * * * since the voir dire proceedings have not been made available as part of the record on appeal” (177 AD2d 498, 499, citing People v Campanella, 176 AD2d 813). Defendant subsequently appealed to this Court by permission of one of its Judges. We now affirm the order of the Appellate Division, but on a somewhat different analysis.
*266 Initially, to the extent that the trial court based its ruling on any purported right of the prosecutor to make peremptory challenges regardless of their racial basis, the court clearly misstated the law. The Supreme Court’s landmark ruling in Batson v Kentucky (supra) definitively foreclosed any such arguments and articulated a new standard for establishing a claim of racial discrimination in the use of peremptory challenges. Since Batson was decided, this Court, as well as the Supreme Court, have elaborated upon that new standard (see, e.g., Powers v Ohio, 499 US 400, 111 S Ct 1364; Griffith v Kentucky, 479 US 314; People v Bolling, 79 NY2d 317; People v Kern, 75 NY2d 638; People v Jenkins, 75 NY2d 550). As we noted in People v Jenkins (supra, at 555), it is "no longer open to question” that "the racially motivated exercise of peremptory challenges * * * violates the Equal Protection Clause of the Fourteenth Amendment.” The time is long since past for questioning the basic premises underlying Batson and its progeny.
The standard mandated by Batson is a relatively straightforward one. First, a defendant asserting a claim under the Batson formula must present a prima facie case by showing that the prosecution exercised its peremptory challenges to remove one or more members of a cognizable racial group from the venire and that there exist facts and other relevant circumstances sufficient to raise an inference that the prosecution used its peremptory challenges to exclude potential jurors because of their race (Batson v Kentucky, supra, at 96-98; People v Jenkins, 75 NY2d 550, 555-556, supra; see, Powers v Ohio, 499 US 400, supra). Once that prima facie showing has been made, the burden shifts and the prosecution must come forward with a race-neutral explanation for its challenged peremptory choices (Batson v Kentucky, supra, at 96-97).
The first element of a prima facie case — demonstrating that members of a cognizable racial group have been excluded — is seldom problematic. The more difficult aspect of the prima facie case delineated in Batson is the second element — a showing of "facts and other relevant circumstances” that would support an inference of impermissible discrimination. That is the element that concerns us here.
"There are no fixed rules for determining what evidence will give rise to an inference sufficient to establish a prima facie case” (People v Bolling, 79 NY2d 317, 323-324, supra). A *267 pattern of strikes or questions and statements made during the voir dire may be sufficient in a particular case (see, Batson v Kentucky, supra, at 97; see also, People v Jenkins, 75 NY2d 550, 556, supra). Additionally, this element may be established by a showing that members of the cognizable group were excluded while others with the same relevant characteristics were not (see, People v Bolling, supra, at 324). Another legally significant circumstance may exist where the prosecution has stricken members of this group who, because of their background and experience, might otherwise be expected to be favorably disposed to the prosecution (see, People v Scott, 70 NY2d 420, 425). The court should also take into consideration the fact that the mere existence of a system of peremptory challenges may serve as a vehicle for discrimination by those with racially motivated inclinations (see, Batson v Kentucky, supra, at 96).
Further, although rarely dispositive, the fact that a disproportionate number of strikes have been used against members of a particular racial or ethnic group may be indicative of an impermissible discriminatory motive (see, People v Jenkins, supra, at 556). Conversely, "[t]he mere inclusion of some members of defendant’s ethnic group will not defeat an otherwise meritorious [Batson] motion” (People v Bolling, supra, at 324). The inclusion of token members of a racial group is not an acceptable substitute for a jury selected by racially neutral criteria, and the exclusion of even one member of a group for racial reasons is abhorrent to a fair system of justice.
 Under the circumstances presented here, defense counsel’s sketchy assertions during the colloquy on the Batson claim did not establish a basis for relief. While the prosecutor admittedly exercised his peremptories to strike two of the three African-American jurors, that fact alone is not sufficient, on this record, to establish a "pattern of purposeful exclusion sufficient to raise an inference of discrimination” (People v Steele, 79 NY2d 317, 325; cf., People v Hawthorne, 80 NY2d 873). We reject defendant’s argument that the burden of proving a pattern of purposeful exclusion should be lessened when the size of a particular racial group in a given community is so small as to make statistical evidence inherently unreliable.
Defense counsel’s other assertions during the Batson colloquy that "[the prospective jurors’] questioning was proper” and that "[t]hey indicated no reason why they could *268 not serve fairly on this jury” were also insufficient to establish a prima facie case on this record. The latter assertion served only to highlight that the stricken jurors demonstrated no biases that would disqualify them for service or support a challenge for cause. The former assertion was simply too broad and conclusory to support an inference of discriminatory motive.
We note that, in order to give the trial court a proper foundation to evaluate the claim — as well as to ensure an adequate record for appellate review — a party asserting a claim under Batson v Kentucky (supra) should articulate and develop all of the grounds supporting the claim, both factual and legal, during the colloquy in which the objection is raised and discussed. Where counsel has perceived something suggesting a discriminatory motive in the questioning of prospective jurors or in the answers the jurors have given, the specific facts underlying counsel’s concerns should be fully articulated and described. Despite the absence of voir dire minutes, a trial or appellate court may determine, based on facts elicited during the Batson colloquy, whether a prima facie case of discriminatory use of peremptory challenges has been established (see, People v Bolling, 79 NY2d 317, 324, supra; People v Scott, 70 NY2d 420, 423-424, supra). In most instances, the minutes of the voir dire will be helpful or useful only to the extent that it becomes necessary to resolve specific factual disputes arising during, or as a result of, the Batson colloquy. Thus, contrary to the suggestion in the Appellate Division’s opinion below, the minutes of the voir dire need not be provided in every instance as a precondition for obtaining Batson relief. Indeed, the cases in which the voir dire minutes are necessary to resolve the appeal should be relatively rare.
Here, defense counsel did not satisfy his obligation to articulate a sound factual basis for his claim during the Batson colloquy. His perfunctory statements in support of the defense motion for Batson relief plainly did not establish the existence of facts and other relevant circumstances sufficient to raise an inference that the prosecutor had used his peremptory challenges to exclude individuals because of their race (Batson v Kentucky, supra, at 96-98). Thus, the defense’s objection to the prosecutor’s actions was properly overruled, and the Appellate Division correctly affirmed the judgment of conviction.
*269 Accordingly, the order of the Appellate Division should be affirmed.
Acting Chief Judge Simons and Judges Kaye, Hancock, Jr., Bellacosa and Smith concur.
Order affirmed.