*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 16, 2014                105200
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                   MEMORANDUM AND ORDER

MALIK HASKINS,
                    Appellant.
_____

Calendar Date:  September 3, 2014

Before:  Peters, P.J., Lahtinen, Garry, Rose and Clark, JJ.

_____


        John T. Casey Jr., Troy, for appellant.

        D. Holley Carnright, District Attorney, Kingston (Joan
Gudesblatt Lamb of counsel), for respondent.

_____


Garry, J.

        Appeal from a judgment of the County Court of Ulster County
(Williams, J.), rendered January 6, 2012, upon a verdict
convicting defendant of the crime of burglary in the second
degree.

        On December 12, 2010, upon returning to her home in the
Town of Ulster, Ulster County, the victim observed an unknown car
exit from her driveway, and she followed it out of curiosity.
Pulling alongside the other car, she recognized both the
passenger, whom she identified as defendant, and the female
driver, defendant's girlfriend; the victim had known defendant
for many years and considered him a family friend.  The victim
spoke briefly with defendant, asking if he was "looking for
[her]," and observed a large flat screen television in the rear

of the car. She then drove home and, upon arriving, discovered that the side door to her home had been forced open and her 42-inch flat screen television was missing. The victim called 911 to report the burglary; while waiting for the police to arrive, she received a call from an unidentified male, who directed her to a designated location, where she went and retrieved her television from defendant. Responding to the scene, police observed signs of a forced entry. The victim then returned with her television, and identified defendant as the individual who had returned it to her. Thereafter, following a jury trial, defendant was convicted as charged of burglary in the second degree and sentenced to a prison term of 12 years with five years of postrelease supervision. Defendant appeals.

Defendant challenges County Court's determination, following a Huntley hearing, that portions of statements he made to police at the station were admissible. In so holding, the court credited the testimony of a detective of the Town of Ulster Police Department. The detective testified that defendant willingly came to the police station upon being asked to do so, Miranda warnings were provided and, approximately five minutes later, he requested counsel and stopped talking. At that point all questioning ceased, and he was brought to the holding cell in the booking room for processing. Shortly thereafter, defendant's girlfriend, who had arrived separately at the station, was also brought into the booking room for processing, and she was seated in a chair outside the holding cell. While the girlfriend's pedigree information was being obtained, defendant asked what was going to happen, and officers advised him regarding the arrest and arraignment process, but they did not inquire in any manner about the burglary. Defendant then asked what would happen if he told them what had occurred and that his girlfriend had no involvement, to which another detective responded that it would be "too little, too late." Defendant thereafter made additional statements. County Court held that defendant's statements up to the point of this response were admissible, and those made thereafter were not. At trial, the court permitted a 14-second redacted version of the booking room surveillance video to be played for the jury. Defendant argues that the court erred in denying his motion to suppress his statements made after invoking his right to counsel because they were provoked by police conduct

in bringing his girlfriend into the booking area while he was being processed, and further erred in allowing the corresponding station house video at trial as it was entirely prejudicial, with no probative value.

As defendant requested counsel after being advised of his Miranda rights at the police station, any further police questioning was precluded (see People v Ramos, 99 NY2d 27, 32-33 [2002]; People v West, 81 NY2d 370, 373-374 [1993]; People v Dashnaw, 85 AD3d 1389, 1390-1391 [2011], lv denied 17 NY3d 815 [2011]). However, "[n]otwithstanding this rule, statements made by a defendant who has invoked the right to counsel may nevertheless be admissible at trial if they were made spontaneously " (People v Harris, 57 NY2d 335, 342 [1982], cert denied 460 US 1047 [1983]). Here, we agree with County Court that the People established beyond a reasonable doubt that, following his request for counsel, defendant's statements were not "the result of express questioning or its functional equivalent" (People v Roberts, 12 AD3d 835, 836 [2004], lv denied 4 NY3d 802 [2005] [internal quotation marks and citations omitted]), but were, instead, spontaneous up until the "too little, too late" remark (see People v Maye, 18 AD3d 1026, 1028 [2005], lv denied 5 NY3d 808 [2005]; People v Murphy, 51 AD3d 1057, 1058 [2008], lv denied 11 NY3d 792 [2008]). That is, his statements to that point were "neither induced, provoked nor encouraged by the actions of the police officers" in simply bringing the girlfriend into the booking room, an action consistent with their routine procedure (People v Harris, 57 NY2d at 342; see People v Baker, 27 AD3d 1006, 1008 [2006], lv denied 7 NY3d 785 [2006]). Defendant's subsequent remarks were properly suppressed, and appropriate limiting instructions provided. As to the booking video, we note that the trial testimony had already established the setting in which defendant's statements occurred. Although the probative value was limited, we do not find that the court abused its discretion in determining that the video of the statements was relevant to the burglary charge and, thus, in allowing a redacted segment to be played before the jury (see People v Cintron, 95 NY2d 329, 332-333 [2000]; People v Scarola, 71 NY2d 769, 777 [1988]).

Next, defendant argues that County Court erred in admitting into evidence a redacted recording of the victim's 911 call as an excited utterance, because her call was made after she had time for reflection.  "An out-of-court statement is properly admissible under the excited utterance [hearsay] exception when made under the stress of excitement caused by an external event, and not the product of studied reflection and possible fabrication" (People v Johnson, 1 NY3d 302, 306 [2003]; see People v Edwards, 47 NY2d 493, 496-97 [1979]).  "Among the factors to be considered in determining whether . . . a statement is admissible [are] the nature of the startling event[,] the amount of time which has elapsed between the [startling] occurrence and the statement[,] and the activities of the declarant in the interim to ascertain if there was significant opportunity to deviate from the truth" (People v Johnson, 277 AD2d 702, 705 [2000], lv denied 96 NY2d 831 [2001] [internal quotation marks and citation omitted]; see People v Brown, 70 NY2d 513, 519 [1987]; People v Auleta, 82 AD3d 1417, 1419 [2011], lv denied 17 NY3d 813 [2011]), although "the time for reflection is not measured in minutes or seconds, but rather is measured by facts" (People v Vasquez, 88 NY2d 561, 579 [1996] [internal quotation marks and citations omitted]; accord People v Johnson, 1 NY3d at 306; see also People v Nelson, 266 AD2d 725, 726 [1999], lv denied 95 NY2d 801 [2000]; see generally, Michael J. Hutter, Excited Utterances and Present Sense Impressions: Time to Reevaluate?, NYLJ, Aug. 7, 2014 at 3, col 1).

Here, the victim testified that, although she had followed defendant's car and had spoken with him, it was only after she returned home that she discovered that her home had been broken into and her television was missing, and she called 911 "right away."  In the 911 call, the obviously distressed victim exclaimed, "I was just robbed," and explained her contact with defendant.  As County Court correctly found, being the victim of a burglary is "a startling event" and the victim's call was made "under the stress and excitement of a startling event and [was] not the product of any reflection and possible fabrication" (see People v Prashad, 297 AD2d 352, 352 [2002], lv denied 99 NY2d 563 [2002]; People v Nelson, 266 AD2d at 726; see also People v Rodriguez, 306 AD2d 686, 688 [2003], lv denied 100 NY2d 624 [2003]; compare People v Cantave, 21 NY3d 374, 381-382 [2013]).

Finally, contrary to defendant's argument, although the victim had spoken with defendant and had observed a television, the events preceding her discovery of the burglary did not constitute intervening events, allowing her an opportunity for studied reflection; such intervening events must necessarily occur following the startling event.

We further reject defendant's claim that the admission of the recording of the 911 call violated his right to confront witnesses against him under Crawford v Washington (541 US 36 [2004]; see Davis v Washington, 547 US 813, 821 [2006]). First, we note that both the victim and the police dispatcher who received her call did testify at trial. Further, statements made in response to police inquiries for the primary purpose of enabling them to meet an ongoing emergency, rather than for providing evidence for a later prosecution, are deemed to be nontestimonial in nature and, thus, do not violate the Confrontation Clause (see Davis v Washington, 547 US at 822; People v Nieves-Andino, 9 NY3d 12, 14-15 [2007]). Here, the victim's statements on the 911 recording were nontestimonial (see People v Kenyon, 108 AD3d 933, 937 [2013], lv denied 21 NY3d 1075 [2013]; People v Shaver, 86 AD3d 800, 802 [2011], lv denied 18 NY3d 962 [2012]; see also People v Anderson, 114 AD3d 1083, 1085 [2014], lv denied 22 NY3d 1196 [2014]).

Following a Sandoval hearing, County Court held that the People would be allowed to inquire to a limited extent regarding defendant's prior convictions if he testified, finding that his robbery conviction from 2000 revealed that defendant was willing to place his own interests above those of society and that it went directly to his credibility, while finding some of the underlying facts were too dissimilar and prejudicial. Relative to another criminal conviction, inquiry was limited to establishing that there had been such a conviction, in 2009. Defendant did not object to these rulings, and we decline his request to take corrective action in the interest of justice, as no abuse of discretion is apparent (see CPL 470.15 [6] [a]; People v Wilson, 78 AD3d 1213, 1215-1216 [2010], lv denied 16 NY3d 747 [2011]; People v Jones, 70 AD3d 1253, 1254-1255 [2010]; see generally People v Hayes, 97 NY2d 203, 207-208 [2002]; People v Walker, 83 NY2d 455, 459 [1994]).

Finally, defendant did not preserve his claim that the sentence imposed constituted a penalty for exercising his constitutional right to a jury trial in that it was longer than the People's pretrial plea offer (see People v Hurley, 75 NY2d 887, 888 [1990]; People v Ward, 10 AD3d 805, 808 [2004], lv denied 4 NY3d 768 [2005]). In any event, we note that County Court did not consent to that offer, the disparity is not particularly significant, and the record contains no support for the conclusion that the sentence was retaliatory rather than based upon the seriousness of this offense and other relevant sentencing factors. We find no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence in the interest of justice (see People v Snyder, 91 AD3d 1206, 1215 [2012], lv denied 19 NY3d 968 [2012], cert denied ___ US ___, 133 S Ct 791 [2012]; People v Molina, 73 AD3d 1292, 1293 [2010], lv denied 15 NY3d 807 [2010]).

Peters, P.J., Lathtinen, Rose and Clark, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court